UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 5:19-cv-1212-LCB ) |
| LARRY WALCOTT, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tennessee Valley Authority ("TVA") brought this civil action to enjoin the construction, mooring, and maintenance of an unauthorized structure floating in the Guntersville Reservoir. (Doc. 1). Before the Court is Plaintiff's Motion for Default Judgment as to Defendant Larry Walcott. (Doc. 11). For the reasons that follow, Plaintiff's motion is granted.

### I. Background

On March 4, 1937, Plaintiff acquired real property on and along the Guntersville Reservoir, referred to in TVA land records as Tract No. GR-810 ("TVA GR-810"). (Doc. 1 at 5). TVA GR-810 includes shoreland along Guntersville Reservoir and inundated real property subjacent to the Guntersville Reservoir. (Doc. 1 at 5). On March 9, 1954, Plaintiff sold a subset of TVA GR-810 consisting of about

10.4 acres above the 600-foot contour elevation, known in the TVA land records as Tract No. XGR-258, to Ray W. Stewart, a predecessor-in-interest of Defendant ("XGR-258"). (Doc. 1 at 5–6). Under the March 9, 1954 transfer, Plaintiff retained flowage easement rights for temporary and intermittent flooding on land below the 606-foot contour elevation and also granted the owner of XGR-258 the right of ingress and egress from the waters of Guntersville Lake over and upon the adjoining land on TVA GR-810 lying between the 600-foot contour elevation and the waters of the lake. (Doc. 1 at 6). On September 20, 2010, Defendant acquired a subset of XGR-258 from his predecessor-in-interest (the "Walcott Private Property"). (Doc. 1 at 6).

In November of 2011, Defendant informed Plaintiff that he planned to construct a floating structure ("the Unauthorized Structure") in Guntersville Reservoir; Defendant was advised that, before beginning construction, Defendant would need to apply for a Section 26a permit.[1] (Doc. 1 at 6). On August 12, 2012, Defendant submitted a handwritten letter and plan to Plaintiff describing the structure that he intended to build. (Doc. 1 at 7). On October 9, 2012, Plaintiff informed Defendant of various requirements that he would have to satisfy if he intended to build a structure, including Section 26a and Alabama state-law

---

[1] Section 26a of the TVA Act authorizes the agency to issue permits for the building, operation, and maintenance of, among other things, obstructions affecting navigation. *See* 16 U.S.C § 831y-1.

requirements. (Doc. 1 at 7). Defendant did not apply for a Section 26a permit before beginning construction of what would become the Unauthorized Structure. (Doc. 1 at 7).

In December of 2018, without Plaintiff's consent and without first obtaining a Section 26a permit, Defendant began construction of the Unauthorized Structure on the shoreland portion of TVA GR-810 adjacent to the Walcott Private Property. (Doc. 1 at 7). The portion of TVA GR-810 where Defendant began construction of the Unauthorized Structure is real property owned in fee simple by TVA. (Doc. 1 at 7). On January 7, 2019, Plaintiff posted a Notice of Violation ("NOV") on the Unauthorized Structure advising Defendant that it was being constructed on TVA's property in violation of TVA's Section 26a regulations and that it must be removed within ninety days. (Doc. 1 at 7–8). On January 14, 2019, Plaintiff again informed Defendant that he did not have Plaintiff's permission or authorization to construct the Unauthorized Structure and that it needed to be removed from Plaintiff's property. (Doc. 1 at 8). On April 4, 2019, Defendant informed Plaintiff that he intended to continue with construction of the Unauthorized Structure and that he intended to launch the Unauthorized Structure from Plaintiff's property into the Guntersville Reservoir. (Doc. 1 at 8). That same day, Plaintiff again told Defendant to stop construction of the Unauthorized Structure and directed Defendant not to place it into the Guntersville Reservoir. (Doc. 1 at 8).

3

On April 11, 2019, Plaintiff hand-delivered a final written notice to Defendant to immediately cease and desist construction of the Unauthorized Structure, remove it from Plaintiff's property, and refrain from launching it into the Tennessee River System. (Doc. 1 at 8). At the time this notice was delivered, Plaintiff observed the Unauthorized Structure floating in the waters of the Guntersville Reservoir[2] on an inundated portion of TVA GR-810 in front of the private water use facility on the shoreland portion of TVA GR-810. (Doc. 1 at 8–9). Plaintiff also observed heavy equipment tracks on the shoreland where it appeared that the Unauthorized Structure had been dragged or pushed into the Reservoir. (Doc. 1 at 9). The inundated portion of TVA GR-810 where the Unauthorized Structure was floating is real property owned in fee simple by Plaintiff. (Doc. 1 at 9).

On May 30, 2019, Plaintiff was informed by Alabama Marine Patrol that the Unauthorized Structure had damaged a private dock and a bass boat. (Doc. 1 at 9). The Unauthorized Structure was subsequently towed back to the area of the Guntersville Reservoir around TVA GR-810 and anchored. (Doc. 1 at 9). Defendant then moored the Unauthorized Structure to the private water use facility on the shoreland portion of TVA GR-810 adjacent to the Walcott Private Property. (Doc. 1 at 9).

---

[2] Guntersville Reservoir is an artificial lake running seventy-six miles up the Tennessee River from Guntersville Dam in northeastern Alabama to Nickajack Dam in southeastern Tennessee; the reservoir is part of the Tennessee River System.

The Unauthorized Structure remains moored to the private water use facility on the shoreland portion of TVA GR-810 adjacent to the Walcott Private Property and floating in the waters of the Guntersville Reservoir over the inundated portion of TVA GR-810. (Doc. 1 at 9). The inundated portion of TVA GR-810 where the Unauthorized Structure is presently floating is real property owned in fee simple by Plaintiff. (Doc. 1 at 9). The private use water facility to which the Unauthorized Structure is moored is also on real property owned in fee simple by Plaintiff. (Doc. 1 at 9). Plaintiff has received numerous phone calls from landowners in the vicinity of TVA GR-810 informing Plaintiff that the Unauthorized Structure is blocking their access to the Reservoir. (Doc. 1 at 10). Defendant continues to construct, moor, and maintain the Unauthorized Structure on Plaintiff's property or in the Guntersville Reservoir and the Tennessee River System. (Doc. 1 at 10). Defendant has not sought Plaintiff's permission to construct, moor, or maintain the Unauthorized Structure on Plaintiff's property or the Guntersville Reservoir and the Tennessee River System, and Plaintiff has not otherwise permitted this obstruction. (Doc. 1 at 10).

**II.     Legal Standards**

   **a.     Default judgment**

Federal Rule of Civil Procedure 55 prescribes a two-step process for securing a default judgment against a party that has failed to "plead or otherwise defend" an action. Fed. R. Civ. P. 55(a), (b). First, once it is shown that the party has failed to

plead or otherwise defend the action, the Clerk of Court enters the party's default. Fed. R. Civ. P. 55(a). Second, once the Clerk has entered default against the Defendant, the party seeking relief must move for the entry of a default judgment. Fed. R. Civ. P. 55(b). Except where the claim is for a sum certain or a sum ascertainable by computation, the party must apply to the Court for the default judgment. Fed. R. Civ. P. 55(b)(2). The Court may enter the default judgment if the defendant is not a minor or incompetent person and there is "a sufficient basis in the pleadings for the judgment entered." Fed. R. Civ. P. 55(b)(2); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting Nishimatsu Contr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Though he is not held to admit conclusions of law, "a defaulted defendant is deemed to [have] admit[ed] the plaintiff's well-pleaded allegations of fact." *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

### b. TVA and the Guntersville Reservoir

TVA is a constitutionally authorized executive branch corporate agency and instrumentality of the United States, created by and existing pursuant to the TVA Act of 1933, as amended, 16 U.S.C. §§ 831–831ee. (Doc. 1 at 2). In the TVA Act, Congress broadly charged TVA with the construction of dams and reservoirs "in the Tennessee River and its tributaries." 16 U.S.C § 831c(j). *See U.S. ex rel. TVA v.*

*Welch*, 327 U.S. 546, 553 (1946); *U.S. ex rel. TVA v. Three Tracts of Land*, 377 F. Supp. 631, 635 (N.D. Ala. 1974).

The TVA Act authorizes TVA to "acquire real estate for the construction of dams, reservoirs . . . and other structures, and navigation projects at any point along the Tennessee River, or any of its tributaries[,]" 16 U.S.C § 831c(i), and provides that the "title to such real estate shall be taken in the name of the United States of America, and thereupon all such real estate shall be entrusted to [TVA] to accomplish the purposes of [the TVA Act]." *Id.* § 831c(h). The TVA Act specifically charges TVA with "[t]he unified development and regulation of the Tennessee River system," including the Guntersville Reservoir, as agent for the United States. 16 U.S.C. § 831y-1.

### c. Section 26a of the TVA Act and TVA's implementing regulations

Section 26a of the TVA Act provides that "no dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in the [Tennessee] [R]iver" without approval by TVA. 16 U.S.C § 831y-1. In short, "[t]he language of [16 U.S.C § 831y-1] makes clear that [TVA's] approval of plans is a condition precedent to the construction of any structures, that construction without approval is prohibited, and that [TVA] has the power to enforce this provision." *Gast*

*v. Tenn. Valley Auth.*, No. 4:10-CV-45, 2011 WL 864390, *9 (E.D. Tenn. Mar. 10, 2011).

TVA's implementing regulations also prohibit the construction of any obstruction along or in the Tennessee River System and any of its tributaries—including the Guntersville Reservoir—without prior approval by TVA. 18 C.F.R. § 1304.1. Thus, under Section 26a and TVA's implementing regulations, TVA regulates, through its Section 26a permitting process, the construction of structures "affecting navigation, flood control, or public lands or reservations along or in the Tennessee River or any of its tributaries." 18 C.F.R. § 1304.1.

### d. Injunctive relief

The Supreme Court has outlined a four-factor test that plaintiffs seeking permanent injunctive relief must satisfy. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). In such situations, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (citations omitted). *See also Tenn. Valley Auth. v. Long*, No. 4:12-CV-704-VEH, 2013 WL 387933, at *2–5 (N.D. Ala. Jan. 18, 2013) (finding that

TVA had successfully established that a permanent injunction should issue due to the defendant's Section 26a violation).

### III. Analysis

####   a. **Defendant's Unauthorized Structure violates Section 26a.**

Plaintiff's complaint and Defendant's default together establish the elements of a Section 26a violation. For purposes of Section 26a, "obstructions" include "boat docks, piers, boathouses, buoys, floats, boat launching ramps, fills, water intakes, devices for discharging effluent, bridges, aerial cables, culverts, pipelines, fish attractors, shoreline stabilization projects, channel excavations, and floating cabins." 18 C.F.R. § 1304.1.

To sustain a Section 26a action, Plaintiff must prove that: (1) the Unauthorized Structure is an obstruction along the Tennessee River System; (2) Defendant did not seek approval under Section 26a from Plaintiff to construct the Unauthorized Structure; and (3) Defendant had neither express nor implied authority to build the Unauthorized Structure. *See, e.g., TVA v. Jones*, 199 F. Supp. 3d 1198, 1203–4 (E.D. Tenn. 2016). Plaintiff has proven the elements of a Section 26a action.

The Guntersville Reservoir is a part of the Tennessee River System and the Unauthorized Structure is located on the Guntersville Reservoir. The Unauthorized Structure is an obstruction because it is currently affecting navigation on the Guntersville Reservoir and affecting the adjoining neighbors' access to the Reservoir

9

and other locations. Defendant exacerbated this situation when he launched the Unauthorized Structure into the Guntersville Reservoir, creating a navigation and safety hazard on the Reservoir. At the time Plaintiff filed its complaint, Defendant had not filed a complete Section 26a permit application with Plaintiff in accordance with TVA's implementing regulations. While Defendant had submitted to Plaintiff a rough plan for a structure prior to beginning construction of the Unauthorized Structure, Plaintiff did not approve that plan, and it did not issue Defendant a permit. Thus, Defendant did not obtain a permit from Plaintiff prior to constructing the Unauthorized Structure, and he did not have either Plaintiff's express or implied authority to build it.

The Unauthorized Structure continues to be a violation of Section 26a and TVA's regulations. Accordingly, the Court finds that the Unauthorized Structure violates Section 26a of the TVA Act.

### b. The Unauthorized Structure constitutes a trespass.

Plaintiff's complaint and Defendant's default also together establish the elements of a trespass. A trespass is "any entry on the land of another without express or implied authority." *Foust v. Kinney*, 80 So. 474, 475 (Ala. 1918). *See also* Restatement (Second) of Torts §§ 158, 160 (1965). Plaintiff has shown the Unauthorized Structure is a trespass on TVA property.

Defendant's Unauthorized Structure is located on TVA property. Defendant does not have authority to maintain the Unauthorized Structure on TVA property because he never received Plaintiff's permission or authorization to build it. The Unauthorized Structure continues to be moored to TVA property and is floating over inundated TVA property without authorization by Plaintiff. Thus, the Court finds that the Unauthorized Structure constitutes a trespass on TVA property.

### c.     Injunctive relief is appropriate.

Plaintiff has thus established a Section 26a violation as well as a trespass over real property Plaintiff owns in fee. Under the Supreme Court's four-factor test, Plaintiff has made a showing that injunctive relief is appropriate:

First, Plaintiff has established that it has suffered an irreparable harm. In contrast, the only harm Defendant will suffer will be the costs of modifying the Unauthorized Structure to bring it into compliance with Section 26a and TVA's regulations. Irreparable harm cannot flow from an injury that can be compensated with money. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990); *San Francisco Residence Club, Inc. v. O'Shea*, Case No. 5:08-cv-01423-CLS, 2009 WL 10688917, at *2 (N.D. Ala. June 20, 2009) ("Generally, mere economic loss is not irreparable harm.").

11

Second, Plaintiff has shown that it cannot be sufficiently compensated by legal remedies. No adequate legal remedy exists for Defendant's Section 26a violation and trespass because the physical presence of the Unauthorized Structure constitutes the violation and the trespass, and because Plaintiff has unsuccessfully attempted, multiple times, to have Defendant remedy his violation. (Doc. 1 at 7–11).

Third, Plaintiff has established that equity favors issuing its requested injunction. Defendant will have to expend money, time, and effort to comply with the injunction Plaintiff requests. However, Defendant will ultimately benefit by having a structure that complies with Section 26a. Plaintiff, on the other hand, will suffer injuries if the Court does not issue the injunction, including Defendant's continuous trespass on Government property and the resulting disruption to TVA's regulatory scheme with regard to the Guntersville Reservoir. The harms to Plaintiff outweigh those that would be caused to Defendant. Accordingly, the balance of equities tips in Plaintiff's favor.

Fourth, Plaintiff has demonstrated that issuing a permanent injunction in its favor would not act against the public interest. The injunction Plaintiff seeks accords with the public interest by reinforcing TVA's statutorily guaranteed authority to regulate the Tennessee River System. It also buttresses the integrity of the federal government's proprietary rights to its own land. Moreover, the injunction is not intrusive as it simply requires Defendant to do what Section 26a and TVA's

regulations already require him to do. Finally, Plaintiff's requested injunction is in the public interest because it helps to prevent obstructions such as the Unauthorized Structure from interfering with navigation and posing a risk to public safety.

Section 26a provides that any structure that violates the TVA Act may be prevented by "injunction or order of any district court exercising jurisdiction in any district in which such structures or parts thereof may be situated." 16 U.S.C § 831y-1. District courts are specifically empowered to issue injunctive relief ordering the removal of unpermitted structures. 16 U.S.C. § 831-y. *See, e.g., Long*, 2013 WL 387933, at *5 (enjoining the defendant to remove a structure located on Government property and in violation of Section 26a and granting TVA authority to remove the structure from TVA property if not removed by the defendant within sixty days of the order); *Jones*, 199 F. Supp. 3d at 1203–5 (granting TVA's request for a permanent injunction requiring the defendant to remove the structures erected in violation of Section 26a and ordering that TVA's property be restored to its natural state).

Injunctive relief is also appropriate in cases of trespass. *See e.g.*, *United States v. Bundy*, No. 2:12-cv-0804-LDG-GWF, 2013 WL 3463610, at *3 (D. Nev. July 9, 2013) ("[T]he United States is entitled to injunctive relief as a matter of law once trespass on federal lands is proven."); *United States v. Newcome*, No. 2:04-CV-650, 2005 WL 2230205, at *5 (S.D. Ohio Sept. 12, 2005) (issuing injunction because "in

the absence of evidence of permission, all structures and obstructions . . . which are located [on the Government's flowage easement] below 890 feet msl must be removed").

IV.     **Conclusion**

For the foregoing reasons, Plaintiff's Motion for Default Judgment as to Defendant Larry Walcott (Doc. 11) is **GRANTED**. Plaintiff is entitled to the injunctive relief it has requested in its motion.

It is therefore **ORDERED** that:

(1)     Within thirty days of the Court's Judgment, Defendant Larry Walcott shall submit to TVA a written modification plan that includes size and location specifications that comply with TVA's Section 26a regulations. TVA will then advise Walcott, in writing, whether the plan submitted by Walcott conforms to TVA's regulations.

(2)     Within ninety days of TVA's advising Walcott that his submitted modification plan conforms to TVA's regulations, Walcott shall bring the Unauthorized Structure into compliance with TVA's regulations.

(3)     If Walcott does not bring the Unauthorized Structure into compliance with TVA's regulations on or before the expiration of the 90-day period, TVA shall have leave to file a motion for an amended judgment requesting permission to remove the Unauthorized Structure from the Tennessee River System, including the

Guntersville Reservoir and any real property owned by TVA, in addition to reimbursement from Walcott of the costs incurred by TVA for the removal.

(4) If TVA determines that the Unauthorized Structure, as modified, complies with TVA's regulations, TVA will then determine whether a Section 26a permit can be issued. TVA shall not unreasonably withhold approval of any modification plan by Walcott but may condition such approval on terms and conditions consistent with good engineering practice and environmental protection considerations routinely followed by TVA and required of TVA contractors, such as TVA's "best management practices." *See Buck Mountain Cmty. Org. v. TVA*, 629 F. Supp. 2d 785, 789 (M.D. Tenn. 2009) ("[T]he EA [environmental assessment] lists a number of mitigation measures to be taken by TVA, including following best management practices[.]").

A separate final judgment will issue.

**DONE** and **ORDERED** this February 27, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE